IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| TAURUS D. BLAKEMORE | § | |
| v. | § | CIVIL ACTION NO. 6:08cv16 |
| RUSK COUNTY JAIL STAFF, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Taurus Blakemore, a former inmate of the Rusk County Jail proceeding *pro se*, filed this lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights during his confinement in the jail. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c). As Defendants, Blakemore named Lt. Cassandra Shaw and Officer John Shavers, as well as the "Rusk County jail staff."

In his complaint and testimony at an evidentiary hearing, Blakemore stated that he was in the Rusk County Jail in July of 2007 when he became ill, suffering from dizziness, nausea, and vomiting. He went to an officer named Robertson, and the officer told him to go sit down, which he did, but this did not help.

Blakemore said that he tried to eat a little, but his condition became worse. He said that he was throwing up too much to eat and that he asked for medical care, but was told, apparently by an officer named Hollis, that the nurse was not there.

Blakemore stated that two inmates, Harris and Wilson, got on the intercom and said that Blakemore was throwing up, but the response was that they should tell the nurse. The inmates replied that the nurse was not there. At some point, Blakemore said, he asked Shavers why no one

1

had come to see him, and Shavers asked "what's wrong with you, why not tell the nurse?" Shavers also told him to file a grievance, which he did, but he received no reply.

The next morning, Blakemore says, he collapsed. Some officers came and said that he "did not look good," and so he was put in bed. Blakemore says that he had collapsed between 6:30 and 7:00 a.m. and saw the doctor around 5:00 p.m. The doctor had him put in the hospital, where he remained for two weeks, including two stays in the intensive care wing.

Blakemore said that he was never told how to get medical care - he told Robertson and Hollis that he was sick, and Shavers told him to file a grievance but then never came by to get it. Blakemore says that he did not come out of his cell to eat for almost a week, and that the jail staff should have come checked on him but did not.

The "Rusk County jail staff," named as an individual defendant in the lawsuit, was dismissed on February 17, 2009. The remaining defendants, Lt. Shaw and Officer Shavers, were ordered to answer the lawsuit and have done so. On March 26, 2009, Blakemore filed a motion for summary judgment, to which the Defendants have filed a response. On April 17, 2009, Shaw and Shavers filed a motion for summary judgment. Blakemore did not file a response to this motion.

In their motion for summary judgment, the Defendants state first that Blakemore did not exhaust his administrative remedies. They assert that the one grievance which Blakemore did file concerning this incident was filed on August 7, 2007. This grievance reads as follows:

> I've been back here for 3 to 4 days throwing up, vomiting blood, short winded, dizzy, light head, can't keep anything on my stomach, and I've told officers on other shifts and all they can say is how come you have not told the nurse and she hasn't been here. One officer watched me damn near passed out over the telephone in the hallway and did nothing and I told him that I was sick.

This grievance is dated August 7, 2007. The response is dated August 8, 2007, and was signed by Lt. Shaw; it reads "Dr. Mann notified to make a visit."

The Defendants say that Blakemore told Shavers on August 7 that he was sick, but that he did not appear to be sick and did not tell Shavers at that time that he had been sick prior to

2

that day. Consequently, Shavers told him to fill out a medical request form to see the nurse. Shortly after Blakemore did so, Shavers says that he went off duty.

The following day, the Defendants say, a jailer named Shirley Sanders received a call on the intercom that Blakemore was sick. Sanders and Shaw went to the cell and saw Blakemore lying on the floor. At that time, they say, Blakemore said that he had not fallen but had "felt faint" and laid down on the floor. His blood pressure was taken and he was put in bed.

Later that day, Sanders got a call that Blakemore was throwing up. Sanders and Shaw went back to the cell and saw Blakemore by the commode with a "small amount" of vomit. Blakemore was again put back in bed and his blood pressure taken, and Sanders called Dr. Mann, who said that he would come.

At 3:30 p.m., the Defendants say, Dr. Mann came to see Blakemore. He checked Blakemore's blood sugar and ordered Blakemore taken to the hospital. Jail records indicate that when Blakemore was seen by Dr. Mann, his blood sugar was 418, considerably above the normal range of 80 to 120. The summary judgment evidence shows that Blakemore stayed in the hospital from August 8 until August 16, 2007, at a cost to Rusk County of almost a thousand dollars a day.

However, the Defendants say, Blakemore made no written requests for medical care prior to August 7, 2007, although he did request such items as cold medicine, Tylenol, ibuprofen, and foot cream. At the time of book-in, Blakemore indicated that he was not diabetic, and so the Defendants say that no one, not even Blakemore himself, knew that he suffered from this ailment until his blood sugar level made him ill.

The Defendants state that the policies of the Rusk County Jail provide that if an inmate becomes ill, he should write a medical request to the jailer on duty. They state that the only such request was made on August 7, 2007, the day before Blakemore actually saw the doctor. Blakemore did not file any grievances before or after this date, other than the August 7 request itself,

complaining of denial of medical care or inadequacy of medical care, nor did he appeal any such grievances to the Step Two level.

Consequently, the Defendants argue first that Blakemore failed to exhaust his administrative remedies, as required by 42 U.S.C. §1997e. They also contend that Blakemore has failed to show that they were deliberately indifferent to his serious medical needs, and that they are entitled to qualified immunity.

In his motion for summary judgment, Blakemore points to the grievance he filed on August 7, saying that he told Officer Robertson that he was ill as well as other officers, but that nothing was done until he collapsed the next day. He acknowledges that when he was seen on the morning of August 8 after throwing up, there was "very little vomit," explaining that this was because he had been unable to eat anything. Blakemore also notes that although he collapsed at around 6:30 a.m. on the morning of August 8, the doctor did not arrive until 3:30 that afternoon.

Standards for Summary Judgment

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the nonmovant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is

entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## Legal Standards and Analysis

The first issue to consider is the question of exhaustion of administrative remedies. Prior to the passage of the Prison Litigation Reform Act, Public Law 104-134 (April 26, 1996), lawsuits brought by inmates who had not exhausted their administrative remedies would be stayed

for a period of up to 180 days in order to permit exhaustion. 42 U.S.C. §1997e(a)(1). This provision has now been deleted from the law. As amended, 42 U.S.C. §1997e(a) reads as follows:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C., Section 1997e(a), as amended by Public Law 104-134, Title I, sec. 101, April 26, 1996, *renumbered as* Title I, Public Law 104-140, sec. 1 (May 2, 1996, 110 Stat. 1327). No statutory basis now exists for placing a stay on the action; instead, completion of the exhaustion process is a mandatory prerequisite for filing the lawsuit. The Fifth Circuit has held that where an inmate fails to exhaust his administrative remedies, the lawsuit may be dismissed, and that completion of the exhaustion process after the lawsuit has been filed is not sufficient. Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998).

In this case, the competent summary judgment evidence shows that Blakemore filed only one grievance about the incident in question, on August 7, 2007. The Rusk County Jail has a two-step grievance procedure, but Blakemore did not pursue the second step of this procedure by filing an appeal with the Sheriff. Nor did he file any subsequent grievances complaining about this incident. Thus, Blakemore failed to exhaust his administrative remedies, and his lawsuit is amenable to dismissal on this basis.

Furthermore, Blakemore's lawsuit must fail on the merits as well. His complaint is in essence that the named Defendants, Lt. Shaw and Officer Shavers, were deliberately indifferent to his serious medical needs. The Fifth Circuit has held that in cases of episodic acts or omissions by jail personnel, the proper legal standard in analyzing claims brought by pre-trial detainees such as Blakemore is the same deliberate indifference standard used to analyze claims brought by convicted prisoners. Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), *appeal after remand* 135 F.3d 320 (5th Cir. 1998).

This deliberate indifference standard provides that a jailer cannot be held liable for denying an inmate humane conditions of confinement unless the official knows of and disregards

an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. However, an official's failure to alleviate a significant risk which he should have perceived but did not, cannot be condemned as the infliction of punishment. Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); *see* Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

When viewed in the light most favorable to the non-movant, the facts show that Blakemore told Officer Shavers that he was sick, and Shavers asked why Blakemore did not tell the nurse; however, the nurse was not there; Blakemore indicates that the nurse had been off work for a few days because of surgery. Shavers also told Blakemore to file a grievance. While Blakemore does not specifically name Shavers in his grievance, it appears that Shavers was the officer who saw him in the hallway.

Shavers says in his affidavit that he did not recognize that Blakemore needed immediate medical attention, noting that no one was aware that Blakemore suffered from diabetes, not even Blakemore himself. As the Supreme Court explained, even if Shavers should have perceived the immediate medical need but did not, this does not amount to deliberate indifference; while Shavers may have been negligent in failing to recognize the seriousness of Blakemore's condition, this is not enough to sustain liability under Section 1983. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997). The fact that Shavers told Blakemore to file a grievance does not show deliberate indifference; the policies and procedures of the Rusk County Jail provide that if an inmate becomes ill, he should write a medical request to the jailer to forward to medical personnel. Shavers thus was merely instructing Blakemore to follow jail procedure to secure medical care; as noted above, the fact that Shavers may not have recognized that Blakemore required immediate care does not show that Shavers was deliberately indifferent to Blakemore's medical needs.

Nor has Blakemore set out a valid claim against Lt. Shaw, the jail supervisor. He says in his complaint that Lt. Shaw is "the keeper of the jail" and thus responsible for the denial of

7

medical care, although he does not indicate that Shaw was aware that he needed medical care until he actually collapsed and the doctor was summoned.

Instead, Blakemore's claim against Shaw appears to be predicated on the claim that Shaw was the jail supervisor and thus responsible because of her position. The Fifth Circuit has held that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. Williams v. Luna, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).

In this case, Blakemore has not shown that Lt. Shaw was personally involved in a constitutional deprivation, that wrongful conduct by Shaw was causally connected to a constitutional deprivation, or that Shaw implemented a constitutionally deficient policy which was the moving force behind a constitutional deprivation. Blakemore has failed to show any basis for liability on the part of Lt. Shaw and so his claim against her is without merit.

Finally, the Defendants assert that they are entitled to the defense of qualified immunity. The Defendants invoke the defense of qualified immunity in their motion for summary judgment. The Supreme Court has stated that the doctrine of qualified immunity protects government officials from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 129 S.Ct. 808, 815 (2009); Atteberry v. Nocona General Hospital, 430 F.3d 245, 253 (5th Cir. 2005). Because the driving force behind creation of the doctrine was a desire to ensure that insubstantial claims against government officials be resolved prior to discovery, the Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. Pearson, 129 S.Ct. at 815. Once the defense of qualified immunity is invoked, the

burden is on the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002). This burden cannot be discharged by conclusory allegations and assertions. Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005).

The qualified immunity analysis contains two prongs - a determination whether the facts alleged make out a violation of a constitutional right, and a determination whether the right at issue was clearly established at the time of the alleged misconduct. These prongs are not sequential, but may be considered in either order. Pearson, 128 S.Ct. at 817.

In Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court reiterated the standard for a constitutional right to be clearly established, as follows:

> Its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ....but it is to say that in the light of pre-existing law. the unlawfulness must be apparent.'

Hope, 536 U.S. at 739, 122 S.Ct. at 2515, *citing* Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The Supreme Court went on to clarify that the factual situation from which the pre-existing constitutional right developed does not have to be "fundamentally similar" to the one before a court when addressing qualified immunity. Rather, qualified immunity can be overcome as long as prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights. The Court concluded that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope, 536 U.S. at 740-41, 122 S.Ct. at 2515-16.

The Fifth Circuit has held that before engaging in the inquiry as to whether prison officials unreasonably violated clearly established law, the district court must first consider whether the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of federal law in the first place. Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004).

In this case, Blakemore failed to discharge his burden because he has not shown that any constitutional violations were committed, because he has not demonstrated deliberate indifference on the part of either of the two individual defendants in the case. Nor has he shown that either of these defendants acted unreasonably in light of clearly established federal law. Hence, Lt. Shaw and Officer Shavers are entitled to the defense of qualified immunity, and their motion for summary judgment should be granted. It is accordingly

ORDERED that the Defendants' motion for summary judgment (docket no. 46) is hereby GRANTED. It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice. Finally, it is

ORDERED that any and all motions which may be pending in this case, specifically including but not limited to the Plaintiff's motion for summary judgment, are hereby DENIED.

**So ORDERED and SIGNED this 19th day of June, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE